# Powell *et al. v.* Thompson.

*Action on the Case by Landlord for Conversion of Tenant's Crop.*

1. *Oral stipulation; when admissible.*—While a written contract can not be contradicted or varied by parol evidence, it is permissible, where the writing does not purport to set out the entire contract, to show by parol other stipulations not inconsistent with those expressed.

2. *Written agreement not extended by parol.*—A tenant having given his note or written obligation for the rent, specifying a certain number of bales of cotton, it is not permissible to show by parol that he also agreed to deliver a certain quantity of cotton seed.

3. *Custom; when cannot alter written agreement.*—The landlord, suing in case for the conversion of his tenant's crop, whereby his statutory lien was lost, can not be allowed to prove "that it was a rule or custom he had made on his plantation that he should have all the cotton seed raised on the land by his tenants"; because one man can not establish a custom, and because such evidence contradicts the terms of the note for rent, which specified that a certain number of bales of cotton should be delivered as rent.

4. *When joint action will lie; when not.*—If the cotton was converted by the wrongful act of the tenant himself, co-operating with the other defendants, who had notice of the landlord's rights, a joint action for

| | |
|---|---|
| 80 | 51 |
| 93 | 423 |
| 80 | 51 |
| 96 | 459 |
| 80 | 51 |
| 99 | 511 |
| 80 | 51 |
| 100 | 359 |
| 80 | 51 |
| 121 | 100 |
| 80 | 51 |
| f124 | 285 |
| 80 | 51 |
| 128 | 505 |
| 80 | 51 |
| h136 | 655 |

[Powell et. al v. Thompson.]

the wrongful act may be maintained against all of them; but, if the wrongful act of each was separate and distinct, a joint action can not be maintained against them.

5. *When sureties on replevy bond are jointly liable with their principal.* While the removal of the tenant's crop from the rented premises, without the consent of the landlord, and without paying the rent, is *prima facie* a wrongful act, tending to the destruction of the landlord's lien; yet it may be justified by proof of legal right or lawful excuse, as by showing that it was replevied by the tenant after attachment levied at the suit of the landlord, and after the expiration of the tenancy and the tenant's removal from the rented premises; but, if such replevy was made, not in good faith for the preservation of the cotton, but with the intention to waste and convert it, and the sureties on the bond had notice of such wrongful intent, they are liable for the conversion jointly with their principal.

APPEAL from the Circuit Court of Bullock.

Tried before the Hon. H. D. CLAYTON.

This was an action for damages brought by Thompson against appellants, and was commenced on 20th May, 1882. The facts appearing by the record are substantially: that the defendant, Powell, rented a certain tract of land from Thompson for the year, 1881, for which he executed his rent note, to deliver twenty bales of cotton to Thompson, at Fitzpatrick's station, on the 1st of October of that year; that at the end of the year, after payments made to said Thompson by Powell, on account of rent, and advances, Powell was still largely indebted to his landlord. Powell moved off appellee's premises in January, 1882, and removed a quantity of cotton, cotton seed, corn and fodder, in which he was assisted by the other defendants, some of whom were purchasers of the removed property. Before the commencement of this suit, Thompson sued out an attachment, viz: in January, 1882, and levied upon certain portions of the crops grown on the rented premises, in 1881, that had been removed. The attached property was replevied by defendant, and said attachment proceedings were afterwards, and before the commencement of this suit, quashed. The complaint sets out the facts as above stated, and claims that said Powell removed from the rented premises, the crops grown thereon in the year 1881, without paying his rent and advances, and without the consent of the landlord, the said Thompson; and that he, and the other defendants, with a knowledge of plaintiff's lien upon said crops, had converted them to their own use, and prevented plaintiff from enforcing his lien thereon. Defendants demurred to the complaint, and, among others, assigned as ground of demurrer, that the landlord could not maintain an action on the case against the tenant, and others jointly with him, for an injury done to the landlord's lien. The demurrers of defendant were overruled, and issue was joined on the plea of the general issue. The

plaintiff, testifying in his own behalf, stated that he had rented the premises occupied by Amos Powell for the year 1881, to him, for twenty bales of cotton, for which he took said Powell's rent note; and that, at the same time, Powell orally agreed that Thompson might have the cotton seed grown on the place. Plaintiff further testified that he claimed the cotton seed " because it was a rule or custom he had made on his plantation," that he should have all the cotton seed grown on his plantation, and that this rule or custom was known to said Powell. The defendants moved to exclude the evidence of plaintiff in reference to the rule or custom on his plantation, and also his evidence as to Powell's oral agreement that he should have the cotton seed. These motions were overruled by the court and defendants excepted. Plaintiff testified that in January, 1882, he sued out an attachment against the crops grown by Powell on the rented premises and levied it on five bales of lint cotton, five stacks of fodder, three hundred and fifty bushels of corn, and about sixteen hundred bushels of cotton seed, and offered in evidence said attachment writ, with the levy endorsed thereon, and the replevy bond made by defendants; that said Powell moved off his premises at the end of the year, 1881, and that the crops levied on by said attachment had been removed without his consent and without the payment of his debt for rent and advances; that a part of these crops were put in the crib of defendant, Randle, who had hired his wagons to said Powell and that said lint cotton had been shipped to Union Springs and sold by defendant, Lassitter. Defendant Powell testified that he was not indebted to plaintiff in any sum ; that he had, before the commencement of this suit, fully paid him all he ever owed him for rent and advances; that when he left plaintiff's place he carried the property which he and others had replevied, to the place to which he removed, for the better preservation of the property pending the attachment proceeding. Defendant Randle testified that he hired his wagons to his co-defendant, Powell, to remove said property which had been replevied, from the premises of plaintiff to the place to which Powell had moved ; that he did not know where Powell expected or intended to carry said property ; that after he was informed that the corn had been put in his, witness's, crib, he told said Powell that he would use said corn and pay for it at the termination of the pending law suit. It was admitted that both Randle and Lassitter knew that said Powell, was a tenant of plaintiff in the year 1881. A number of charges were asked by plaintiff and given by the court, to which defendants severally excepted, but the opinion renders it unnecessary to set them out.

The errors assigned are based upon the action of the court

[Powell et al. v. Thompson.]

in refusing to exclude from the jury the evidence of plaintiff in relation to the rule or custom on his place by which he was to have the cotton seed grown on it; and in refusing to exclude from the jury the evidence of plaintiff that the defendant, Amos Powell, agreed orally with plaintiff, at the time of making the written rent contract, that he, Thompson, should have the cotton seed grown on the place that year, and in giving the charges asked by plaintiff.

ARRINGTON & GRAHAM, for appellants.

NORMAN & SON, and N. B. FEAGIN, for appellees.

(No briefs came into the hands of the reporter).

SOMERVILLE, J.—The action is brought by a landlord, against his tenant and other defendants, for removing crops grown on the rented premises, with notice of the existence of the plaintiff's lien for rent and advances, and converting, or otherwise making way with such crops, so as to defeat the enforcement of the lien by the statutory remedy of attachment. The form of action is in case, and the right of recovery is based on the alleged tortious act of the defendant, by which it is claimed that the landlord has been injured, the extent of his injury being the value of his lost lien.—*Thompson v. Powell*, 77 Ala. 391. The suit, in other words, is not for the conversion or trespass involved in the act of removing the crops, but for the same consequential injury resulting therefrom in the loss or destruction of the plaintiff's lien.

It does not appear that the landlord and the tenant—here plaintiff and defendant—entered into any written contract which was intended to define fully and completely the rights and liabilities of both of the contracting parties. It is shown, however, that the tenant, Amos Powell, executed on his part a written agreement, bearing date January 22d, 1881, by which he promised to deliver to the plaintiff, at a specified time and place, twenty bales of cotton, of the average weight of five hundred pounds per bale, as a stipulated compensation for the annual rent of the land, upon which the crops in controversy were raised.

It is a settled rule of law, that where the whole of a contract has not been reduced to writing, so much of it as is separable and distinct, may be proved by oral evidence, even though contemporaneous with the writing, without infringing the principle, that such evidence is inadmissible to contradict or vary the legal effect of a written instrument.—*Huckabee v. Shepherd*, 75 Ala. 342; 1 Addison Contr. (Am. Ed.) § 243; 1 Greenl.

Ev. § 285 a.   Where, for example, a tenant promises in writing to pay a stipulated rent to his landlord, and so much of the contract as was intended to state the liabilities of the landlord is not reduced to writing, but was left to rest in parol, it may be shown by oral evidence that he agreed with the tenant, although contemporaneously with the execution of the tenant's rent note, to make repairs on the rented premises, or incurred other like liability.— *Vandegrift v. Abbott,* 75 Ala. 487.   This rule, however, does not permit the oral contradiction of that part of the agreement which is reduced to writing, and is in itself complete.   It merely authorizes a separate agreement to be established by parol, as to a matter on which the writing is silent, and which is not contradictory of its terms; and this only where the court can properly infer, from the circumstances of the case, that it was not the intention of the parties that the writing should be a complete memorial of the entire transaction between them.—Stephen on Ev. (Reynold's Ed.) p. 122.

It was not allowable, under this principle, to contradict the express terms of the defendant's written agreement by oral proof of a promise to pay more rent than that stipulated.   If it were permissible to show that, in addition to the twenty bales of cotton agreed in writing to be delivered, it was orally agreed to deliver as part of the same consideration, twenty-eight hundred bushels of cotton seed, as contended, it would be quite as competent, on the same principle, to prove an oral agreement of the tenant to pay as many hundred bales of cotton. The court, in our opinion, erred in allowing this evidence to be admitted.

It was equally erroneous to allow the plaintiff to prove that "it was a rule or custom *he had made* on *his plantation,*" that he should have all the cotton seed raised on his land by his tenants, even though this fact was known to the defendant, who was his tenant under the present contract of renting.   One man alone can not establish a custom or usage.   This was a mere personal mode of dealing on the part of the plaintiff, and was in no local sense a custom, because it was not general, but personal.—2 Parson's Contr. 541.

The evidence, moreover, would seem to contradict the express terms of the rent note, and was, for this reason, objectionable.— *Wilkinson v. Williamson,* 76 Ala. 163 ; *Barlow v. Lambert,* 28 Ala. 704.   The tendency of modern authorities is strongly against the loose policy of the English courts, as manifested in their earlier decisions, admitting inconclusive facts in proof of local usage, and thereby contradicting the necessary implications of written agreements, under the pretext of annexing incidents to them.—*Thompson v. Riggs,* 5 Wall 663 ; *Brown v. Foster,* 113 Mass. 136; Lansan on Usages, pp. 371, 417.

[Powell et al. v. Thompson.]

The *gravamen* of the present action, as we have said, is the consequential destruction of the plaintiff's lien by the removal and sale or consumption of the crops through the alleged unlawful act of the defendants. If this result has been produced by the joint act of the several defendants, co-operating together with a knowledge of the plaintiff's rights, and without legal excuses, they would all be liable, jointly or severally, for the injury thus done. The act of each of the wrong-doers would be regarded as the act of all, and the acts of all, in consummation of a common purpose, would be the acts of each. But, for separate and distinct wrongs, in no wise connected by the ligament of a common purpose, actual or imputed by law, the wrong-doers are liable only in separate actions, and not jointly in the same action.—*Larkins v. Eckwurzel*, 42 Ala. 322; Barbour on Parties, 203–205.

The removal of crops, subject to a landlord's lien, without first paying the rent or obtaining his consent, is *prima facie* a wrongful act, in effect forbidden by statute, and, if unexplained, constitutes a just ground for attachment.—Code, 1876, § 3472. It tends also to the destruction of the landlord's lien by lessening his dominion and power of supervision over property designed for the security of his rent.—*Thompson v. Powell*, 77 Ala. 391, *supra*.

The wrongfulness of such removal, however, may be rebutted by showing legal right or excuse for it. It may be justified by showing, as in this case, " that the crops have been attached by the landlord" on some statutory ground, and replevied by the execution of the requisite bond on the tenant's part, provided this be done in good faith for the preservation of the property, and not for its waste or consumption. Such replevy does not destroy either the lien of the attachment created by the levy, or that of the landlord for rent created by statute, which exists independently of the levy, and even after the dissolution of the attachment or the quashing of the writ for formal defects in its issue. But it confers on the tenant the right and makes it his duty to take proper care of the property replevied. He becomes the bailee of the sheriff for its safe custody, and for the purpose of its preservation both he and his sureties have a special property in the goods.— *Woolfolk v. Ingraham*, 53 Ala. 11; *Cordaman v. Malone*, 63 Ala. 556. The expiration of a tenant's term, and his own removal to other premises, might well justify him in removing crops replevied under attachment proceedings, in order to insure their safe custody.

If a tenant replevies such property, however, as a mode or device of obtaining possession, under color of legal authority, and with intention to sell or convert it, and not *bona fide* for the purpose. of its preservation, this would be a tortious act,

and all who co-operate in it, with knowledge of the tenant's purpose and of the landlord's rights, would be liable as co-tort-feasors.

The court, in our opinion, committed no error in admitting in evidence the bond, and other papers, executed by the parties to the suit, and relating to the subject matter of it—the re-plevied crops. They showed their interest in, and relation towards the property, and served to throw light upon their conduct in dealing with it subsequently. *Prima facie* these papers imputed nothing but good faith in their dealing, but this could be repelled by the facts, if deemed sufficient. The burden was on the plaintiff to show collusion on the part of the several defendants in doing some one or more wrongful acts destructive of the plaintiff's lien as landlord and in execution of a common intent to this end, each being responsible for the natural and probable consequences of his acts, or those of his co-defendants in which he co-operated by counsel or assistance.

The judgment of the Circuit Court is reversed and the cause remanded.

CLOPTON, J., not sitting.